NELSON L. ATKINS, ESQ. (SBN: 36752)
(nelson_atkins@gshllp.com)
KENNETH M. JONES, ESQ. (SBN: 140358)
(kenneth_jones@gshllp.com)
GONZALEZ SAGGIO & HARLAN LLP
3699 Wilshire Boulevard, Suite 890
Los Angeles, California 90010
Tel: (213) 487-1400

L. JOSEPH LOVELAND (*Pro Hac Vice*)
jloveland@kslaw.com
S. STEWART HASKINS (*Pro Hac Vice*)
shaskins@kslaw.com
ZACHARY A. MCENTYRE (*Pro Hac Vice*)
zmcentyre@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 572-4600

*Attorneys for Defendant The Coca-Cola Company*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAGHAYEGH MISSAGHI, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>THE COCA-COLA COMPANY, a Georgia corporation,<br><br>Defendant. | Case No. 12-cv-07472-SJO-E<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF THE COCA-COLA COMPANY'S MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT**<br><br>DATE: **DECEMBER 10, 2012**<br>TIME: **10:00 A.M.**<br>CTRM: **1**<br><br>Judge: Hon. S. James Otero<br><br>Action Filed: August 30, 2012 |

Defendant The Coca-Cola Company ("Coca-Cola") submits its Memorandum of Points and Authorities in support of its Motion to Compel Arbitration and Dismiss the Complaint.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

RELEVANT FACTUAL BACKGROUND ................................................................... 2

    I.   Plaintiff's My Coke Rewards Membership ..................................................... 2

    II.  The Program Rules ........................................................................................... 3

    III. Procedural History ............................................................................................ 4

ARGUMENT ..................................................................................................................... 4

    I.   The FAA Strongly Favors Arbitration of Plaintiff's Claim ............................ 5

    II.  The Court Should Enforce the Arbitration Agreement as Written ................. 6

        A.   The Arbitration Agreement Is Valid Under Michigan Law ................ 6

        B.   The Arbitration Agreement Encompasses This Dispute ..................... 8

    III. Plaintiff Must Arbitrate Her Claims Individually ........................................... 9

    IV. The Court Should Dismiss (or, Alternatively, Stay) This Case ..................... 9

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allied-Bruce Terminix Cos. v. Dobson,*
  513 U.S. 265, 115 S. Ct. 834 (1995) .................................................................... 4

*AT&T Mobility LLC v. Concepcion,*
  131 S. Ct. 1740 (2011) ........................................................................... 2, 5, 6, 9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
  475 U.S. 643, 106 S. Ct. 1415 (1986) ................................................................ 6, 8

*Braverman Props., LLC v. Bos. Pizza Rests., L.P.,*
  No. 1:10-cv-941, 2011 WL 2551189 (W.D. Mich. June 27, 2011) ..................... 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
  207 F.3d 1126 (9th Cir. 2000) ............................................................................. 4

*Dauod v. Ameriprise Fin. Servs., Inc.,*
  No. 8:10-cv-00302, 2011 WL 6961586 (C.D. Cal. Oct. 12, 2011) ................... 10

*First Options of Chi., Inc. v. Kaplan,*
  514 U.S. 938, 115 S. Ct. 1920 (1995) .................................................................. 6

*Gonzalez v. Citigroup, Inc.,*
  5:11-cv-0795, 2011 WL 5884250 (E.D. Cal. Nov. 23, 2011) ............................. 6

*Green Tree Fin. Corp.-Ala. v. Randolph,*
  531 U.S. 79, 121 S. Ct. 513 (2000) ..................................................................... 4

*Kilgore v. KeyBank, N.A.,*
  673 F.3d 947 (9th Cir. 2000) ............................................................................... 5

*Knutson v. Sirius XM Radio, Inc.,*
  No. 12cv418, 2012 WL 1965337 (S.D. Cal. May 31, 2012) ............................. 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
  473 U.S. 614, 105 S. Ct. 3346 (1985) ............................................................. 6, 8

*Murphy v. DIRECTV, Inc.,*
  2:07-cv-6465, 2011 WL 3319574 ................................................................... 6, 9

*Remark LLC v. Adell Broadcasting*,
  817 F. Supp. 2d 990 (E.D. Mich. 2011) ............................................................. 7

*Shammami v. Allos*,
  No. 11-12015, 2011 WL 4805931 (E.D. Mich. Oct. 11, 2011) ........................... 8

*Shearson/Am. Express v. McMahon*,
  482 U.S. 220, 107 S. Ct. 2332 (1987) ................................................................. 4

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) .............................................................................. 9

*ThinkJet Ink Info. Res., Inc. v. Sun Microsys., Inc.*,
  368 F.3d 1053 (9th Cir. 2004) ............................................................................ 9

*Traton News, LLC v. Traton Corp.*,
  No. 3:11-cv-435, 2012 WL 3822161 (S.D. Ohio Aug. 28, 2012) ...................... 8

*Williams Int'l Co. v. New W. Mach. Tool Corp.*,
  No. 09-12516, 2010 WL 331714 (E.D. Mich. Jan. 22, 2010) ............................ 8

**STATUTES**

9 U.S.C. § 1 ................................................................................................................ 1

9 U.S.C. § 2 ................................................................................................................ 5

9 U.S.C. § 3 .............................................................................................................. 10

# I. INTRODUCTION

In October 2010, Plaintiff joined a loyalty program that Coca-Cola sponsors, the My Coke Rewards program, by visiting the My Coke Rewards website and agreeing to the Program Rules that govern My Coke Rewards. Decl. of S. Merwarth ("Merwarth Decl.") ¶¶ 9, 11 (attached as **Ex. A**). The Program Rules expressly state that any dispute between Plaintiff and Coca-Cola relating to My Coke Rewards will be resolved on an individual basis -- not in a class action -- and exclusively through arbitration under the rules of the American Arbitration Association -- not litigation. *Id.* Nevertheless, Plaintiff filed this purported class action lawsuit against Coca-Cola, alleging Coca-Cola sent her unauthorized text messages in connection with My Coke Rewards. Compl. ¶¶ 1,2. Plaintiff contends that these text messages violate the federal Telephone Consumer Protection Act of 2005 (the "TCPA"), and she seeks statutory damages on behalf of herself and the purported class. *Id.* ¶ 4. Coca-Cola moves the Court to dismiss this case in favor of arbitration, as the parties agreed when Plaintiff joined the program.

Under the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.*, this Court should enforce the arbitration agreement between Plaintiff and Coca-Cola and require Plaintiff to resolve this dispute in an individual arbitration with Coca-Cola. Plaintiff affirmatively accepted the Program Rules governing My Coke Rewards, which expressly provide for individual arbitration of disputes relating to My Coke Rewards, when she joined the program. The arbitration agreement in the Program Rules broadly encompasses *any* disputes relating to My Coke Rewards, including this one. Accordingly, the arbitration agreement is valid and should be enforced.

Just last year, the United States Supreme Court made clear that the FAA requires courts to give great deference to arbitration agreements, like the agreement between Coca-Cola and Plaintiff, and to enforce those agreements

according to their plain language. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011). In this motion, Coca-Cola asks the Court to do just that: hold Plaintiff to the Program Rules she agreed to when she joined My Coke Rewards and compel her to pursue her claims through arbitration. Accordingly, Coca-Cola respectfully requests that the Court grant its motion, compel Plaintiff to arbitrate this dispute, and dismiss her Complaint with prejudice.

## II. RELEVANT FACTUAL BACKGROUND

### I. Plaintiff's My Coke Rewards Membership

My Coke Rewards is a membership loyalty program that Coca-Cola sponsors, which allows consumers to collect points by buying certain Coca-Cola products. Merwarth Decl. ¶ 5. Each time a My Coke Rewards member buys a qualifying Coca-Cola product, she may earn points by entering the My Coke Rewards code on the product label either by visiting the My Coke Rewards website, tablet website, or mobile website, or by texting the code to a designated number. *Id.* ¶ 6. The member can then redeem her points for merchandise or services. *Id.* ¶ 7.

On October 23, 2010, Plaintiff joined My Coke Rewards by visiting the My Coke Rewards website and providing certain information, including a valid email address and a mobile phone number. *Id.* ¶ 9. Plaintiff also answered a series of questions about whether she wanted to participate in particular aspects of My Coke Rewards. *Id.* One of those questions asked Plaintiff if she "want[ed] to receive text messages on [her] mobile phone highlighting rewards, special mobile programs and free offers." *Id.* ¶ 10. Plaintiff responded affirmatively by clicking on button indicating "Sure." *Id.* Plaintiff thus expressly and unequivocally consented to receive text messages relating to My Coke Rewards.

After providing the information about herself and consenting to receive text

1  messages about My Coke Rewards, Plaintiff checked a box stating that she
2  "underst[ood] and agree[d] to the Program Rules for My Coke Rewards." *Id.* ¶ 11.
3  Plaintiff then clicked "submit." *Id.* The underlined term -- Program Rules -- was a
4  hyperlink, which allowed the user to view the documents upon clicking on the
5  links. *Id.* ¶ 12.

## II.  THE PROGRAM RULES

By clicking "submit" and joining My Coke Rewards, Plaintiff agreed to the Program Rules. The following statement was prominently displayed on the first page of the Program Rules:

> **PLEASE READ CAREFULLY. By reviewing these Terms and Conditions, clicking "I Agree" on the registration page, and participating, you agree to the following rules governing the My Coke Rewards Loyalty Program.**

*Id.* ¶ 14. Plaintiff confirmed her agreement to these rules by participating in the My Coke Rewards program, including entering codes, collecting points, and redeeming points. *Id.* ¶ 18.

Under the Program Rules, Plaintiff agreed to arbitrate any dispute related to the My Coke Rewards program.  The Program Rules expressly provide:

> As a condition of participating in this Program, Enrollee agrees that any and all disputes, claims, and causes of action arising out of or connected with this Program, . . . shall be resolved individually, without resort to any form of class action and exclusively by arbitration under the International Arbitration Rules of American Arbitration Association.

*Id.* ¶ 15.

MPA RE: MOTION TO COMPEL ARBITRATION                              CASE NO. 12-CV-07472-SJO-E

3

Under the Program Rules, the arbitration would take place in Oakland County, Michigan. *Id.* In addition, the Program Rules state that "[a]ll issues and questions concerning the construction, validity, interpretation and enforceability of the [Program Rules] . . . shall be governed by . . . the laws of the State of Michigan," without regard to choice-of-law rules. *Id.* ¶ 16.

### III. PROCEDURAL HISTORY

Despite the unambiguous provision in the Program Rules requiring Plaintiff to pursue any claims relating to My Coke Rewards on an individual basis through arbitration, on August 30, 2012, Plaintiff filed this purported class action lawsuit against Coca-Cola. In the Complaint, Plaintiff alleges that Coca-Cola sent her unauthorized text messages in connection with My Coke Rewards. Compl. ¶¶ 1, 2. Plaintiff asserts a claim against Coca-Cola for allegedly violating the TCPA, on behalf of herself and a putative class. *Id.* ¶ 4.

### IV. ARGUMENT

The FAA applies to any transaction directly or indirectly affecting interstate commerce. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277, 115 S. Ct. 834, 841 (1995). Under the FAA, an arbitration agreement -- like the agreement between Coca-Cola and Plaintiff -- is presumptively valid. *See Shearson/Am. Express v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 2337 (1987). Moreover, the Ninth Circuit Court of Appeals has held that, in accordance with the FAA, a court must compel arbitration when (i) the parties entered into a valid arbitration agreement, and (ii) the arbitration agreement encompasses the plaintiff's claims. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). As the party opposing arbitration, Plaintiff bears the burden of demonstrating that the arbitration agreement is invalid or does not encompass her

claims. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92, 121 S. Ct. 513, 522 (2000).

Because Plaintiff cannot demonstrate that she and Coca-Cola did not enter into a valid arbitration agreement that encompasses her claims, the Court must compel Plaintiff to pursue her claims, if at all, through individual arbitration in Oakland County, Michigan.

## I.     The FAA Strongly Favors Arbitration of Plaintiff's Claim

Section 2 of the FAA makes arbitration clauses in contracts "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The two goals of the FAA are to enforce private agreements and encourage efficient and speedy dispute resolution. *Concepcion*, 131 S. Ct. at 1748 ("[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings"). The Supreme Court interprets section 2 of the FAA as reflecting a "liberal federal policy favoring arbitration," and also the "fundamental principle that arbitration is a matter of contract." *Concepcion*, 131 S. Ct. at 1745 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010)). In *Concepcion*, The Supreme Court reiterated its longstanding interpretation of the FAA and applied that understanding in the context of an arbitration agreement that required the plaintiff not only to arbitrate, but to do so individually. *Concepcion*, 131 S. Ct. at 1748 (holding that the FAA preempts California law that arbitration agreements incorporating class action waivers are per se unconscionable).

The Ninth Circuit has long recognized the importance of enforcing arbitration provisions in contract. *See, e.g., Kilgore v. KeyBank, N.A.*, 673 F.3d 947, 960 (9th Cir. 2000) (holding that FAA requires named plaintiffs to arbitrate claims for injunctive relief designed to benefit the public). Moreover, since the

MPA RE: MOTION TO COMPEL ARBITRATION                          CASE NO. 12-CV-07472-SJO-E

5

Supreme Court issued the *Concepcion* decision, courts within the Ninth Circuit have enforced arbitration provisions in putative class action lawsuits -- including lawsuits virtually identical to this one. *Knutson v. Sirius XM Radio, Inc.*, No. 12cv418, 2012 WL 1965337 (S.D. Cal. May 31, 2012) (granting motion to compel arbitration in putative TCPA class action relating to allegedly unauthorized text messages); *Murphy v. DIRECTV, Inc.*, 2:07-cv-6465, 2011 WL 3319574, at **2-3 (C.D. Cal. Aug. 2, 2011) (granting motion to reconsider earlier denial of motion to compel arbitration in light of *Concepcion*); *Gonzalez v. Citigroup, Inc.*, 5:11-cv-0795, 2011 WL 5884250, at *2 (E.D. Cal. Nov. 23, 2011) (compelling arbitration in putative TCPA class action even though, unlike here, plaintiff alleged she had no relationship with defendant giving rise to contractual arbitration agreement).

In short, the United States Supreme Court has held that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27, 105 S. Ct. 3346, 3353-54 (1985). In fact, the Supreme Court has stated that a district court should only deny motions to compel arbitration under the FAA if the court may say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986). This is particularly true in cases, like this one, in which the arbitration clause at issue is broad. *See id.* In light of this abundant authority, the Court should grant Coca-Cola's motion and compel arbitration in this case.

## II. The Court Should Enforce the Arbitration Agreement as Written

### A. The Arbitration Agreement Is Valid Under Michigan Law

To determine whether an arbitration agreement is valid for purposes of the FAA, courts look to state law. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995). In this case, the Program Rules specify

MPA RE: MOTION TO COMPEL ARBITRATION                             CASE NO. 12-CV-07472-SJO-E

6

that Michigan law governs "[a]ll issues and questions concerning the construction, validity, interpretation and enforceability of the" Program Rules, including the arbitration provision, without regard to choice-of-law rules. Merwarth Decl. ¶ 16.

Under Michigan law, a valid contract requires an offer (*i.e.*, a "manifestation of willingness to enter into a bargain") and an acceptance (*i.e.*, "the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act"). *Remark LLC v. Adell Broadcasting*, 817 F. Supp. 2d 990, 1001 (E.D. Mich. 2011). The contract must be based on valid consideration (*i.e.*, a "bargained-for exchange involving a benefit on one side, or a detriment suffered, or service done on the other"), and the parties must reach a meeting of the minds on all of the essential terms of the contract. *Id.* To determine whether the parties reached a meeting of the minds, courts use an objective standard. *Id.*

The Program Rules satisfy all four these criteria. First, Coca-Cola plainly made an offer to Plaintiff to participate in My Coke Rewards, and Plaintiff -- by visiting the My Coke Rewards website, voluntarily furnishing Coca-Cola with information (such as her mobile phone number), and ultimately clicking on "submit" -- accepted Coca-Cola's offer. Merwarth Decl. ¶¶ 9, 10, 13. Plaintiff later re-affirmed her acceptance of the Program Rules by participating in the My Coke Rewards program. *Id.* ¶ 18. The consideration for the contract was the service Coca-Cola provided to Plaintiff in facilitating the My Coke Rewards program, which enabled her to redeem points in exchange for merchandise and services. *See id.* ¶¶ 5-7. Finally, the parties unquestionably reached a meeting of the minds because Plaintiff clicked "submit" after being advised, in no uncertain terms, that by doing so she was accepting the Program Rules. *See id.* ¶¶ 11, 12, 14.

In light of these facts, the arbitration agreement that Plaintiff entered into

with Coca-Cola is valid under Michigan law.[1] *See Shammami v. Allos*, No. 11-12015, 2011 WL 4805931, at *6 (E.D. Mich. Oct. 11, 2011) (holding that parties entered into valid arbitration agreement because plaintiff expressly agreed to contract providing that plaintiff would submit disputes with defendant to arbitration); *Braverman Props., LLC v. Bos. Pizza Rests., L.P.*, No. 1:10-cv-941, 2011 WL 2551189, at *4 (W.D. Mich. June 27, 2011) (same); *Williams Int'l Co. v. New W. Mach. Tool Corp.*, No. 09-12516, 2010 WL 331714, at *7 (E.D. Mich. Jan. 22, 2010) (compelling arbitration based on arbitration provision in document incorporated by reference into contract).

### B. The Arbitration Agreement Encompasses This Dispute

As noted above, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Mitsubishi Motors*, 473 U.S. at 626-27, 105 S. Ct. at 3353-54, such that a district court should only deny a motion to compel arbitration under the FAA if the court may say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650, 106 S. Ct. at 1419. Given the scope of the arbitration agreement at issue in this case, the Court can reach no conclusion except that it covers Plaintiff's claims.

The arbitration agreement in the Program Rules broadly states that "*any and all* disputes . . . arising out of or connected with" My Coke Rewards must be resolved "individually" and "exclusively by arbitration." Merwarth Decl. ¶ 15. Plaintiff's claims relate exclusively to Plaintiff's membership in My Coke Rewards and Coca-Cola's conduct related to My Coke Rewards. Specifically, Plaintiff

---

[1] This conclusion is also consistent with a recent decision by a district court in the Sixth Circuit indicating that "clickwrap" agreements, like Plaintiff's agreement to be bound by the Program Rules in this case, are binding and enforceable. *See Traton News, LLC v. Traton Corp.*, No. 3:11-cv-435, 2012 WL 3822161, at *6 n.10 (S.D. Ohio Aug. 28, 2012).

alleges that Coca-Cola sent her unauthorized text messages in connection with My Coke Rewards in violation of the TCPA. Compl. ¶¶ 2-4. As a result, the parties' arbitration agreement plainly encompasses Plaintiff's claims. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720-21 (9th Cir. 1999) (holding that an agreement requiring arbitration of any dispute "arising in connection with" a contract reached every dispute between the parties that had a significant relationship to the contract); *see also Murphy*, 2011 WL 3319574, at \*\*3-4 (granting motion to compel arbitration and holding that "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability.") (quoting *Bischoff v. Guzik*, 180 F. Supp. 2d 1097, 1106 (C.D. Cal. 2002)).

### III. Plaintiff Must Arbitrate Her Claims Individually

In addition to compelling Plaintiff to arbitrate, rather than litigate, her claims against Coca-Cola, *Concepcion* makes it clear that the Court must enforce the arbitration agreement *as written*. Because the arbitration agreement requires Plaintiff to assert any claims "individually, without resort to any form of class action," Merwarth Decl. ¶ 15, the Court should order that Plaintiff arbitrate her claim on an individual basis only. *See Concepcion*, 131 S. Ct. at 1749-50; *see also Murphy*, 2011 WL 3319574, at \*3 (finding arbitration provision incorporating class action waiver enforceable).

### IV. The Court Should Dismiss (or, Alternatively, Stay) This Case

Because the arbitration agreement between Plaintiff and Coca-Cola broadly requires Plaintiff to arbitrate all of her claims against Coca-Cola, this Court should dismiss Plaintiff's Complaint. *See ThinkJet Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (affirming dismissal of claims when arbitration agreement encompassed all claims) (citing *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir. 1978)). Indeed, a court in this

District recently dismissed a claim in a situation like this one, in which an arbitration agreement that included a class action waiver compelled arbitration of the plaintiff's claims on an individual basis. *See Dauod v. Ameriprise Fin. Servs., Inc.*, No. 8:10-cv-00302, 2011 WL 6961586, at *6 (C.D. Cal. Oct. 12, 2011). This Court should do the same and dismiss Plaintiff's claims with prejudice.

If, however, the Court declines to dismiss Plaintiff's claims, then the Court should stay this action pending arbitration in accordance section 3 of the FAA. 9 U.S.C. § 3. *See Dauod*, 2011 WL 6961586, at *6 (acknowledging that under the FAA, a court may either dismiss or stay a case pending arbitration).

## V. **CONCLUSION**

For these reasons, the Court should compel Plaintiff to arbitrate her claims on an individual basis in Oakland County, Michigan, in accordance with the International Arbitration Rules of the American Arbitration Association, and dismiss Plaintiff's Complaint with prejudice.

Dated:  November 5, 2012

GONZALEZ, SAGGIO & HARLAN LLP
Attorneys for Defendant,
THE COCA-COLA COMPANY

*/s/ Kenneth M. Jones*

By: _____
NELSON L. ATKINS, ESQ.
KENNETH M. JONES, ESQ.

MPA RE: MOTION TO COMPEL ARBITRATION                             CASE NO. 12-CV-07472-SJO-E

**PROOF OF SERVICE**
[CCP 1013a; Fed. R. Civ. P.6]

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 3699 Wilshire Blvd., Suite 890, Los Angeles, California 90010.

On **November 6, 2012**, I served the foregoing document, described as **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF THE COCA-COLA COMPANY'S MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT** in this action by placing [] the original [✓] a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as follows:

Sean P. Reis
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688

*Attorneys for Plaintiff Shaghayegh Missaghi*

[] [BY MAIL – CCP §1013a(1)] I am "readily familiar" with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence is deposited with the United State Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at Los Angeles, California.

[] [BY MESSENGER SERVICE – CCP §1011] by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

[] [BY ELECTRONIC MAIL – CCP §1010.6(a)(6)] I caused such document(s) described herein to be sent to the person(s) at the e-mail address listed above. I did not receive, within a reasonable time after transmission, any electronic message or other indication that the transmission was unsuccessful.

[] [BY FACSIMILE TRANSMISSION – CCP §1013(e)] I am personally and

MPA RE: MOTION TO COMPEL ARBITRATION          CASE NO. 12-CV-07472-SJO-E
11

readily familiar with the business practice for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of address(es) at the number(s) listed above. The facsimile machine that I used complies with Rule 2003(3) and no error was reported by the machine.

[✔] BY CM/ECF SYSTEM) I caused the above-referenced documents to be sent by electronic transmittal to the Clerk's Office using the CM/ECF System for filing which generated a Notice of Electronic Filing to the CM/ECF registrants in this case.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

DATED: November 6, 2012

*K. Cockrum*
_____
K. Cockrum