1  NELSON L. ATKINS, ESQ. (SBN: 36752)
   (nelson_atkins@gshllp.com)
2  KENNETH M. JONES, ESQ. (SBN: 140358)
   (kenneth_jones@gshllp.com)
3  GONZALEZ SAGGIO & HARLAN LLP
   3699 Wilshire Boulevard, Suite 890
4  Los Angeles, California 90010
   Tel: (213) 487-1400
5
6  L. JOSEPH LOVELAND (*Pro Hac Vice*)
   jloveland@kslaw.com
7  S. STEWART HASKINS (*Pro Hac Vice*)
   shaskins@kslaw.com
8  ZACHARY A. MCENTYRE (*Pro Hac Vice*)
   zmcentyre@kslaw.com
9  KING & SPALDING LLP
   1180 Peachtree Street, N.E.
10 Atlanta, Georgia 30309
   Tel: (404) 572-4600
11
   *Attorneys for Defendant The Coca-Cola Company*
12

13            IN THE UNITED STATES DISTRICT COURT

14          FOR THE CENTRAL DISTRICT OF CALIFORNIA

15

16 SHAGHAYEGH MISSAGHI,                  )  CASE NO. 12-CV-07472-SJO-E
17 individually and on behalf of a class of )
   similarly situated individuals,       )  REPLY MEMORANDUM IN
                                          )  SUPPORT OF THE
18                                        )  COCA-COLA COMPANY'S
            Plaintiff,                    )  MOTION TO COMPEL
19                                        )  ARBITRATION AND DISMISS THE
   v.                                     )  COMPLAINT
20                                        )
   THE COCA-COLA COMPANY, a              )
21 Georgia corporation,                   )  DATE:    DECEMBER 10, 2012
                                          )  TIME:    10:00 A.M.
22          Defendant.                    )  CTRM:    1

23                                           JUDGE: HON. S. JAMES OTERO

24                                           ACTION FILED: AUGUST 30, 2012

25 ///

26 ///

27
                                    -1-
28 ─────────────────────────────────────────────
        REPLY MEMORANDUM IN SUPPORT OF
   THE COCA-COLA COMPANY'S MOTION TO COMPEL
      ARBITRATION AND DISMISS THE COMPLAINT

There is no doubt this case is subject to arbitration under the parties' contract. Even if there were, the United States Supreme Court has held that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27, 105 S. Ct. 3346, 3353-54 (1985). As demonstrated below, the Court should grant Coca-Cola's motion and dismiss this case in favor of arbitration.

## I.   PLAINTIFF IS BOUND BY THE ARBITRATION PROVISION IN THE PROGRAM RULES

Plaintiff does not dispute that (i) she enrolled in My Coke Rewards ("MCR") in October 2010; (ii) she checked the box stating that she "want[ed] to receive text messages on [her] mobile phone"; or (iii) as a prerequisite to enrolling, she checked a box stating: "I understand and agree to the Program Rules for My Coke Rewards." Merwarth Decl. ¶¶ 9-11 & Ex. 1 [Dkt. 18-3]. Nor does Plaintiff dispute that all three versions of the Rules in effect since she enrolled state that "[a]s a condition of participating in this Program, Enrollee agrees that . . . *any and all disputes . . . arising out of or connected with this Program, . . . shall be resolved individually, without resort to any form of class action and exclusively by arbitration* under the International Arbitration Rules of American Arbitration Association." *Id.* ¶ 15 & Ex. 2 ¶ I.2 (emphasis added).[1]

Despite these facts, Plaintiff asserts in her response -- contrary to her claim that she "never consented" to receive text messages[2] -- that she somehow was not

---

[1] All three versions of the Rules are attached to the Merwarth Declaration as collective Exhibit 2. The material provisions of all three sets of Rules are substantively identical.

[2] Plaintiff cites her own declaration for this proposition, but it does not support her contention. *See* Missaghi Decl. ¶¶ 5-11 [Dkt. 29].

REPLY MEMORANDUM IN SUPPORT OF
THE COCA-COLA COMPANY'S MOTION TO COMPEL
ARBITRATION AND DISMISS THE COMPLAINT

bound by the unchanged arbitration language because she only challenges texts sent in 2012, and allegedly did not "participate" in MCR that year. But Plaintiff need not "participate" each year to be bound by *unchanged* provisions of the Rules. The Rules require "continued participation" in MCR only for acceptance of *changes* to the Rules. Merwarth Decl., Ex. 2 ¶ G.3. Because the arbitration provision never changed, Plaintiff consented to arbitration when she enrolled in MCR in 2010, and that consent continued to govern any dispute related to the MCR, regardless of when the dispute arose. *See Hodsdon v. DirecTV, LLC*, No. C 12-02827, 2012 WL 5464615, at **2-3 (N.D. Cal. Nov. 8, 2012) (noting that it is well settled that courts must hold "arbitration agreements to a life and validity separate and apart from the agreement in which they are imbedded."). Even if continued participation were required, however, Plaintiff "participated" in MCR in 2012 when she allegedly texted "STOP" to the designated number *in 2012*. Missaghi Decl. ¶¶ 4-5.[3]

It is simple: Plaintiff assented to the arbitration agreement in the MCR Rules and must be held to her bargain. *See Knutson v. Sirius XM Radio, Inc.*, No. 12cv418, 2012 WL 1965337, at *4 (S.D. Cal. May 31, 2012); *Blau v. AT&T Mobility*, No. C 11-00541 CRB, 2012 WL 10546, at *4 (N.D. Cal. Jan. 3, 2012).

## II.   THE ARBITRATION AGREEMENT IN THE RULES APPLIES HERE

### A.   The Rules Govern This Dispute

The Rules, not the Mobile Terms & Conditions ("MT&C"), apply in this case. The "My Coke Rewards Mobile News Flash" program is a part of the MCR "loyalty" program under which MCR members can elect to receive text messages

---

[3] Plaintiff's arguments underscore that even if this case proceeds, arbitrability will be an individualized question that will preclude class certification in this case.

REPLY MEMORANDUM IN SUPPORT OF
THE COCA-COLA COMPANY'S MOTION TO COMPEL
ARBITRATION AND DISMISS THE COMPLAINT

1    *if they enroll in MCR and agree to the Rules. See* Merwarth Decl., Ex. 2 ¶ E.1

2    ("Once registered online, you may also text message codes with a text-messaging

3    capable device . . ."); *see also* Scharg Decl., Ex. 2-D [Dkt. 30] (attaching Mobile

4    Terms and Conditions). The MT&C therefore supplement, not supplant, the

5    Program Rules. *See* Scharg Decl., Ex. 2-D.

6         The Rules, on the other hand, govern all aspects of MCR, Merwarth Decl.,

7    Ex. 2, p.1, including its text-messaging component. *See id.* ¶ I.5 (stating that the

8    Program Rules "constitute the entire agreement between [the parties] pertaining to

9    the *subject matter hereof*" -- meaning MCR) (emphasis added). In fact, the Rules

10   specifically refer to text message procedures. *E.g., id.* ¶ A.1 ("Individuals can . . .

11   text message the code with a text-messaging capable device . . ."); *id.* ¶ E.2

12   ("Individuals may enter codes via text-messaging capable devices . . .").

13        **B.    The Arbitration Agreement Encompasses Plaintiff's TCPA Claim**

14        The arbitration agreement in the Rules encompasses "any and all disputes,

15   claims, and causes of action *arising out of or connected with [MCR]*." Merwarth

16   Decl. ¶ 15 & Ex. 2 ¶ I.2 (emphasis added). Plaintiff admits this case relates to

17   MCR. Resp. at 1 ("This case involves [Coca-Cola's purported] practice of sending

18   [allegedly] unauthorized text message[s] . . . *under the auspices of its 'My Coke*

19   *Rewards' program*.") (emphasis added). Plaintiff's Complaint recites a number of

20   text messages that expressly refer to MCR. Compl. ¶¶ 16, 20, 22, 23, 24, 25. And

21   Plaintiff's allegation that Coca-Cola did not comply with her subsequent request to

22   opt-out of MCR-related text messages relates directly to MCR. *See* Resp. 10-11.

23   Accordingly, this case falls squarely within the arbitration provision. *See Hodsdon*,

24   2012 WL 5464615, at **3-4.

25        The agreement here bears no resemblance to the agreement in *In re Jiffy*

26   *Lube Int'l, Inc. Text Spam Litigation*, 847 F. Supp. 2d 1253, 1262 (S.D. Cal. 2012).

27

28
REPLY MEMORANDUM IN SUPPORT OF
THE COCA-COLA COMPANY'S MOTION TO COMPEL
ARBITRATION AND DISMISS THE COMPLAINT

1    In *Jiffy Lube*, the court declined to enforce an arbitration agreement that purported

2    to apply to "any and all disputes" between the customer and defendant, without

3    limitation of any kind. *Id.* The arbitration agreement in this case, on the other hand,

4    is narrowly confined to disputes *relating to MCR*. Merwarth Decl. ¶ 15 & Ex. 2 ¶

5    I.2. Moreover, contrary to Plaintiff's implication, the *Jiffy Lube* court did not even

6    *imply*, much less hold, that TCPA claims categorically are not subject to

7    arbitration. Other courts, however, *have* held that arbitration agreements may

8    encompass TCPA claims. *E.g.*, *McNamara v. Royal Bank of Scotland Grp., PLC*,

9    No. 11-cv-2137, 2012 WL 5392181, at *7 (S.D. Cal. Nov. 5, 2012) (granting

10   motion to compel arbitration of TCPA claim); *see also Coneff v. AT&T Corp.*, 673

11   F.3d 1155, 1159 (9th Cir. 2012). This Court should reach the same conclusion.

12   **III.  PLAINTIFF'S CHALLENGES TO ARBITRABILITY FAIL**

13          **A.   Arbitrability Is an Issue for the Arbitrator, Not the Court**

14          The AAA Rules provide that the arbitrator determines his own jurisdiction:

15   "The tribunal shall have the power to rule on its own jurisdiction, including any

16   objections with respect to the existence, scope or validity of the arbitration

17   agreement." Scharg Decl., Ex. 2-F, p. 26. As a result, the arbitrator -- not the Court

18   -- must decide whether the agreement is enforceable.[4] *See Visa USA, Inc. v. Maritz*

19   *Inc.*, No. C 07-05585, 2008 WL 744832, at *4 (N.D. Cal. Mar. 18, 2008).

20          **B.   The Arbitration Agreement Is Not Illusory or Unconscionable**

21          Plaintiff effectively asks the Court to ignore *AT&T Mobility LLC v.*

---

[4] Many of Plaintiff's arbitrability arguments are directed not towards the arbitration
provision, but the Rules as a whole. For example, the contract provisions relating
to altering terms and governing Plaintiff's available remedies are separate (and
severable) from the arbitration provision. *See* Merwarth Decl., Ex. 2, ¶¶ G.1., I.1,
I.2, I.5. The arbitrator decides such challenges, not the Court. *See Buckeye Check*
*Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446, 126 S. Ct. 1204, 1209 (2006).

1    *Concepcion*, 131 S. Ct. 1740, 1748 (2011). The Ninth Circuit repudiated such

2    arguments, holding that the Supreme Court "rejected th[e] premise" that an

3    arbitration agreement is unconscionable merely because claims "are worth much

4    less than the cost of litigating them" and admonished that policy concerns about

5    consumers' incentive to vindicate their rights "cannot undermine the FAA."

6    *Coneff*, 673 F.3d at 1159.

7        Plaintiff's argument that "by its own rules, AAA is prohibited from

8    accepting the arbitration" is also wrong. The only rule she cites is the rule

9    guaranteeing due process -- a tenuous claim. Resp. at 13. Plaintiff ignores the AAA

10   fee schedule that would permit her to pay $2,000 in initial fees rather than $3,350.

11   Scharg Decl., Ex. 2-E, pp. 44-45. Plaintiff (from Minnesota) argues that arbitration

12   would require her to cover travel costs to Michigan -- but travel costs did not

13   dissuade her from filing suit in California, where she paid a $350 filing fee, $650

14   in *pro have vice* admission fees, and will have to pay Coca-Cola's costs if she

15   loses. LR 54-1, *et seq.*

16       Nor is the arbitration agreement illusory. Coca-Cola may only modify the

17   Rules after providing notice to Plaintiff, and Plaintiff only accepts the changes if

18   she continues participating. Merwarth Decl., Ex. 2, ¶¶ G.1, G.3; *see Eichinger v.*

19   *Kelsey-Hayes Co.*, No. 09-14092, 2010 WL 2720931, at *7 (E.D. Mich. July 8,

20   2010). The Rules are not procedurally unconscionable because they expressly

21   incorporate the AAA Rules. Merwarth Decl. ¶ 15 & Ex. 2, ¶ I.2; *Hodsdon*, 2012

22   WL 5464615, at *5 (no procedural unconscionability where agreement referenced

23   JAMS rules). And the Rules are not substantively unconscionable merely because

24   they supposedly lack "consumer-friendly" provisions. *Concepcion* did not turn on

25   "consumer-friendly" provisions; it turned on FAA preemption of state law.

26   *Hodsdon*, 2012 WL 5464615, at *7.

27

28

-6-

REPLY MEMORANDUM IN SUPPORT OF
THE COCA-COLA COMPANY'S MOTION TO COMPEL
ARBITRATION AND DISMISS THE COMPLAINT

**IV.   CONCLUSION**

For these reasons, the Court should grant Coca-Cola's motion, compel arbitration, and dismiss the Complaint.

Dated:  November 29, 2012        THE COCA-COLA COMPANY


By: /s/ Kenneth M. Jones
    NELSON L. ATKINS, ESQ. (SBN: 36752)
    (nelson_atkins@gshllp.com)
    KENNETH M. JONES, ESQ. (SBN: 140358)
    (kenneth_jones@gshllp.com)
    Gonzalez Saggio & Harlan LLP
    3699 Wilshire Boulevard, Suite 890
    Los Angeles, California 90010
    Telephone (213) 487-1400

REPLY MEMORANDUM IN SUPPORT OF
THE COCA-COLA COMPANY'S MOTION TO COMPEL
ARBITRATION AND DISMISS THE COMPLAINT

## CERTIFICATE OF SERVICE

I, Kenneth M. Jones, an attorney, certify that on November 29, 2012, I served the above and foregoing ***Reply Memorandum in Support of The Coca-Cola Company's Motion to Compel Arbitration and Dismiss the Complaint***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 29th day of November, 2012.


/s/ Kenneth M. Jones

REPLY MEMORANDUM IN SUPPORT OF
THE COCA-COLA COMPANY'S MOTION TO COMPEL
ARBITRATION AND DISMISS THE COMPLAINT