| | |
|---|---|
| | Priority _____ |
| UNITED STATES DISTRICT COURT | Send _____ |
| CENTRAL DISTRICT OF CALIFORNIA | Enter _____ |
| | Closed _____ |
| CIVIL MINUTES - GENERAL | JS-5/JS-6 _____ |
| | Scan Only _____ |

**CASE NO.:** CV 12-07472 SJO (Ex)    **DATE:** January 2, 2013

**TITLE:** Shaghayegh Missaghi v. The Coca-Cola Company

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**          **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                         Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION** [Docket No. 18]

This matter is before the Court on Defendant The Coca-Cola Company's ("Defendant") Motion to Compel Arbitration ("Motion"), filed on November 6, 2012. Plaintiff Shaghayegh Missaghi ("Plaintiff") filed her Opposition on November 26, 2012. Defendant filed its Reply on November 29, 2012. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for December 10, 2012. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS IN PART** the Motion.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Defendant sponsors a customer loyalty program called My Coke Rewards ("MCR"). (Mot. 2, ECF No. 18-1.) MCR allows its members to collect points by buying certain Coca-Cola products. (Mot. 2.) Members can redeem their points for merchandise or services. (Mot. 2.) Persons who wish to participate in MCR may join by registering on the MCR website. (Mot. 2.) The registration form requires registrants to submit their name, postal address, and email address. (Decl. of Stephen Merwarth in Supp. of Mot. to Compel Arbitration ("Merwarth Decl.") Ex. 1, ECF No. 18-3.)

The form also gives registrants the option to receive "Mobile News Flashes"—periodic text messages regarding MCR offers and rewards. (Merwarth Decl. Ex. 1.) If registrants want to receive text messages from MCR ("MCR text messages"), they enter their mobile phone number into the form and check a box confirming that "I want to receive text messages on my mobile phone highlighting rewards, special mobile programs and free offers." (Merwarth Decl. Ex. 1.) The form also provides a hyperlink to the "Mobile Terms & Conditions" (Merwarth Decl. Ex. 1), which explains applicable text messaging fees and how to opt out of MCR text messages (Decl. of Ari J. Scharg in Opp'n to Mot. to Compel Arbitration ("Scharg Decl.") Ex. D, ECF No. 30-4).

Prior to submitting the registration form, registrants must check a box confirming that "I understand and agree to the Program Rules for My Coke Rewards." (Merwarth Decl. Ex. 1.) The form

CASE NO.: <u>CV 12-07472 SJO (Ex)</u>          DATE: <u>January 2, 2013</u>

provides a hyperlink through which registrants can view the Program Rules. (Merwarth Decl. Ex. 1.) The first page of the Program Rules states "[b]y reviewing these Terms and Conditions, clicking 'I Agree' on the registration page, and participating, you agree to the following rules governing the My Coke Rewards Loyalty Program." (Merwarth Decl. ¶ 14.) The Program Rules also include a mandatory arbitration provision:

> As a condition of participating in this Program, Enrollee agrees that (1) any and all disputes, claims, and causes of action arising out of or connected with this Program, . . . shall be resolved individually, without resort to any form of class action and exclusively by arbitration under the International Arbitration Rules of the American Arbitration Association. Arbitration will take place in Oakland County, Michigan; (2) any and all claims, judgments and rewards shall be limited to actual out-of-pocket costs incurred, including costs associated with participating in this Program, but in no event attorneys' fees; and (3) under no circumstances will Enrollee be permitted to seek recovery for, and Enrollee hereby waives all rights to claim, punitive, incidental and consequential damages and any other damages, other than for actual out-of-pocket expenses, and waives any and all rights to have damages multiplied or otherwise increased.

(Merwarth Decl. ¶ 15, Ex. 2, at ¶ I.2.) From October 23, 2010, to the present, the Program Rules have been updated three times. The first version was dated November 17, 2009. (Merwarth Decl. Ex. 2.) This version states that "the current phase of the program" is scheduled to expire on December 31, 2010, but MCR may be extended at Defendant's discretion. (Merwarth Decl. Ex. 2.) The second version was dated January 1, 2011. (Merwarth Decl. Ex. 2.) This version states that "the current phase of the program" is scheduled to expire on December 31, 2011, but MCR may be extended at Defendant's discretion. (Merwarth Decl. Ex. 2.) The third version was dated January 1, 2012. (Merwarth Decl. Ex. 2.) Like previous versions of the Program Rules, this version states that "the current phase of the program" is scheduled to expire on December 31, 2012, but MCR may be extended at Defendant's discretion. (Merwarth Decl. Ex. 2.) All three versions contain the same mandatory arbitration clause. (Reply 2.)

Defendant alleges that on October 23, 2010, Plaintiff registered for MCR, checked the box indicating that she would like to receive MCR text messages, and checked the box stating that she understood and agreed to the Program Rules. (Merwarth Decl. ¶¶ 9-11.) Plaintiff neither admits nor denies these allegations. (*See* Opp'n 2-3.)

Plaintiff alleges that she has not participated in MCR since October 22, 2011. (Decl. of Shaghayegh Missaghi in Opp'n to Mot. to Compel Arbitration ("Missaghi Decl.") ¶ 3, ECF No. 29.) She further alleges that she received numerous MCR text messages in 2012 and continued to

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 12-07472 SJO (Ex)</u>    DATE: <u>January 2, 2013</u>

receive them despite many attempts to opt-out of the MCR text messaging program. (Missaghi Decl. ¶¶ 4-11.)

On August 30, 2012, Plaintiff filed her Complaint against Defendant, asserting violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, on behalf of herself and a class of similarly situated individuals. (*See generally* Compl.) On November 6, 2012, Defendant filed its Motion.

II.    <u>DISCUSSION</u>

Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, makes an agreement to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011). Thus, a court must compel arbitration if (1) there exists a valid agreement to arbitrate; and (2) the dispute falls within the scope of arbitration agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). A party may seek to invalidate an arbitration agreement "by generally applicable contract defenses such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). But a party may not attack an arbitration agreement "by defenses that apply only to arbitration or that derive their meaning from the fact than an agreement to arbitrate is at issue." *Concepcion*, 131 S.Ct. at 1746.

A.    <u>Applicable Law</u>

The Program Rules contain a choice of law provision stating that Michigan law governs "issues and questions concerning the construction, validity, interpretation and enforceability" of the Program Rules. (Merwarth Decl. Ex. 2, at ¶ I.3.) Thus, as a threshold matter, the Court must determine whether to apply Michigan law to the Program Rules.

A federal court sitting in diversity applies the choice of law rules of the forum state. *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008). Because this action was brought in the Central District of California as a diversity action (*see* Compl. ¶ 8), the Court will apply California choice of law rules. Under California law, the choice of law provision will be enforced "unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice [sic], or (b) application of the law of the chosen state would be contrary to a fundamental policy" of California. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465 (1992).

California choice of law rules mandate that the Court apply California law to this dispute. Michigan has no substantial relationship to the parties because Plaintiff is a citizen of Minnesota (Compl. ¶ 6), and Defendant is incorporated in Delaware, is headquartered in Georgia, and has its principal

CASE NO.: CV 12-07472 SJO (Ex)             DATE: January 2, 2013

place of business in Georgia (Merwarth Decl. ¶ 4). Further, the choice to apply Michigan law appears to be completely arbitrary. Neither the Program Rules nor the parties' briefs indicate why Michigan was chosen. Therefore, the Court finds that Michigan has no substantial relationship to either the parties or the transaction, and therefore the Court will apply California law to the instant dispute.

      B.      Validity and Scope of the Agreement to Arbitrate

Plaintiff argues that she can only be bound to arbitrate her claim if she accepted the 2012 version of the Program Rules because the 2009 and 2011 versions of the Program Rules expired and were superceded by the 2012 version.[1] (Opp'n 3.) Defendant contends that, though the 2009 version of the Program Rules expired, the arbitration clause in the 2009 version of the Program Rules remains operative to resolve disputes relating to the MCR. (Reply 3.)

            1.      Enforceability of an Agreement to Arbitrate in an Expired Contract

The termination or expiration of a contract does not extinguish the duty to arbitrate disputes "arising under the contract." *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 251 (1977). A dispute arises under a contract, and is therefore subject to arbitration, "only [1] where it involves facts and occurrences that arose before expiration, [2] where an action taken after expiration infringes a right that accrued or vested under the agreement, or [3] where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205-06 (1991).

The "facts and occurrences" analysis is more complicated, however, when some of the events giving rise to the dispute occurred before the contract expired and some occurred after the contract expired. The Ninth Circuit has held that such a dispute must be arbitrated if (1) "the pre expiration facts or occurrences to be arbitrated [have] *some* significance in the dispute"; and (2) the "the parties agreed to arbitrate those facts or occurrences." *Operating Eng'rs Local Union No. 3 v. Newmont Mining Corp.*, 476 F.3d 690, 693 (2007) (compelling arbitration where an employee committed misfeasance before the contract expired, and then the employee was terminated for the misfeasance after the contract expired).

The issue in dispute in this case involves a mix of facts that arose before the 2009 version of the Program Rules expired and facts that arose after the 2009 version of the Program Rules expired.

---

[1] At least for the purposes of the Motion, neither party disputes (1) that the 2009 and 2011 versions of the Program Rules expired before Plaintiff received the MCR text messages that form the basis of her TCPA claim; and (2) that those prior versions of the Program Rules were superseded by the 2012 version of the Program Rules.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 12-07472 SJO (Ex)</u>          DATE:  <u>January 2, 2013</u>

Several key facts occurred before the Program Rules expired on December 31, 2010: Plaintiff allegedly agreed to receive MCR text messages, agreed to the 2009 version of the Program Rules, and registered for MCR. (Merwarth Decl. ¶¶ 9-11, 18-19.) Certain facts occurred after the 2009 version of the Program Rules expired: Plaintiff received the allegedly unsolicited MCR text messages that form the basis for her TCPA claim. (Missaghi Decl. ¶¶ 4-11.) Because there is a mix of pre-expiration and post-expiration facts, the arbitration provision in the 2009 version of the Program Rules is subject to the rule set forth in *Newmont Mining*.

        2.      <u>Significance of the Facts to the Dispute</u>

The first prong of the *Newmont Mining* rule requires that the pre-expiration facts have some significance in the dispute. *Newmont Mining*, 476 F.3d at 693. Here, the primary factual dispute in Plaintiff's TCPA claim is whether the MCR text messages were unsolicited. The pre-expiration facts identified above all bear on whether Plaintiff agreed to receive the MCR text messages when she registered for MCR. Thus, these facts undoubtedly have some significance in the dispute.

        3.      <u>Scope of the Agreement to Arbitrate</u>

The second prong of the *Newmont Mining* rule requires a court to determine whether the parties agreed to arbitrate the pre-expiration facts or occurrences. *Newmont Mining*, 476 F.3d at 693. In making such a determination, a court must give "due regard . . . to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989). Thus, "as with any contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)

The wording of the arbitration provision is very broad. It provides that "any and all disputes, claims, and causes of action arising out of or connected with this Program" are to be resolved through arbitration. (Merwarth Decl. Ex. 2.) The Program Rules state that a component of the "Program" is that a participant may redeem MCR points by sending a text message to MCR. (Merwarth Decl. Ex. 2.) There is ample evidence demonstrating that Mobile News Flashes are connected with MCR. The Mobile Terms & Conditions states that "[p]articipants who opt-in by text messaging will be automatically subscribed to receive periodical text message updates from the My Coke Rewards program." (Scharg Decl. Ex. D.) Many of the MCR text messages that Plaintiff received expressly refer to MCR. (Compl. ¶¶ 16, 20, 22-25.) The Mobile News Flashes program is presented on the MCR registration webpage. (Merwarth Decl. Ex. 1.) The foregoing facts indicate that Mobile News Flashes is connected with MCR such that this dispute arises out of or is connected with MCR.

Plaintiff presents several counterarguments. First, Plaintiff contends that the sending of MCR text messages is exclusively governed by the Mobile Terms & Conditions. (Opp'n 9.) This argument

CASE NO.: <u>CV 12-07472 SJO (Ex)</u>          DATE: <u>January 2, 2013</u>

is unpersuasive. The Mobile Terms & Conditions comprises only ten sentences that explain very basic information about Mobile News Flashes, such as how to exit the Mobile News Flashes program and whether carrier data rates and text message fees apply. (Scharg Decl. Ex. D.) Furthermore, the very first sentence of the Mobile Terms & Conditions explains that Mobile News Flashes is connected with MCR. (Scharg Decl. Ex. D.) Objectively viewed, the parties did not intend the Mobile Terms & Conditions to be the exclusive agreement governing the sending of text messages.

Plaintiff further argues that the arbitration provision is invalid for being overbroad. (Opp'n 7.) Plaintiff's cite *In re Jiffy Lube International, Inc., Text Spam Litigation*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012), in support of their argument. In that case, the court considered an arbitration provision that required arbitration for "any and all disputes, controversies or claims between Jiffy Lube and you (including breach of warranty, contract, tort or any other claim)." *Id.* at 1262. The court invalidated the arbitration provision because it was unlimited in scope; the provision encompassed any and all disputes between the parties, rather than those "disputes arising from or related to the transaction or contract at issue." *Id.* Here, the arbitration provision pertains to disputes "arising out of or connected with this Program." (Merwarth Decl. Ex. 2.) This language limits the arbitration's scope to certain matters. The "arising out of or connected with" clause in the Program Rules is nearly identical to the limiting clause that the *Jiffy Lube* court suggested could be used to limit the scope of an otherwise overbroad arbitration provision. Thus, *Jiffy Lube* tends to support the validity of the arbitration provision in this case. The Court therefore rejects Plaintiff's argument that the arbitration provision is invalid for being overbroad.

Next, Plaintiff argues that the arbitration clause does not apply because she exited Mobile News Flashes prior to receiving the MCR text messages that form the basis for her claim. (Opp'n 10.) This argument fails because it does not address why this dispute is not "connected with" MCR. (Opp'n 6.)

Lastly, Plaintiff contends that the arbitration provision does not apply to one of the text messages because the content of the text message does not reference MCR. (Opp'n 11.) This argument is disingenuous. Defendant sent this text message to Plaintiff in reply to a text message that Plaintiff sent to Defendant in an attempt to exit Mobile News Flashes. (Missaghi Decl. ¶¶ 6-7.) Thus, disputes over this text message fall within the scope of the arbitration provision.

Accordingly, this dispute is subject to arbitration pursuant to the arbitration provision of the 2009 version of the Program Rules.

  C. <u>Contract Defenses</u>

A party may use generally applicable contract defenses to invalidate an agreement to arbitrate. *Concepcion*, 131 S. Ct. at 1746. Plaintiff asserts two contract defenses to avoid enforcement of

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 12-07472 SJO (Ex)</u>   DATE: <u>January 2, 2013</u>

the arbitration provision. First, she argues that the arbitration clause is unenforceable because it is illusory, and second, she argues that the arbitration clause is unconscionable. (Opp'n 11-20.)

    1.    <u>Whether the Arbitration Provision is Illusory</u>

        a.    <u>The Fairness of the Arbitration Provision</u>

Plaintiff first contends that the arbitration provision is illusory because (1) Plaintiff would be required to pay substantial arbitration fees; (2) Plaintiff may be required to pay Defendant's attorney fees if Defendant prevails in the arbitration; and (3) Plaintiff would have no means to seek legal counsel because the arbitration clause waives her ability to recover attorneys' fees. (Opp'n 12-13.) Thus, per Plaintiff, "Coca-Cola's arbitration clause is no more meaningful than if it told consumers it could sue them, so long as all hearings took place on the moon." (Opp'n 13.)

While Plaintiff cites to Michigan state law for the proposition that arbitration clauses are unenforceable where they are "so unfair that the litigant cannot effectively enforce his statutory rights," that law is not applicable here. (Opp'n 13-14.) Under California law, these arguments are best considered in the context of whether the arbitration agreement violates public policy, which the Court addresses below.

        b.    <u>Noncompliance with American Arbitration Association Protocol</u>

Plaintiff next argues that the arbitration clause is illusory because the American Arbitration Association ("AAA") would not accept an arbitration brought under the arbitration provision. (Opp'n 14.) Specifically, Plaintiff argues that the arbitration provision does not comply with certain principles enumerated in the AAA's Consumer Due Process Protocol. (Opp'n 14.) Plaintiff does not, however, explain why an arbiter would refuse to hear a claim brought under an arbitration provision that purportedly violates the AAA's Consumer Due Process Protocol. Plaintiff cites no cases that have held that such noncompliance would preclude arbitration by the AAA. In fact, this argument has been rejected by the few courts that have entertained it. *Estep v. World Fin. Corp.*, 735 F. Supp. 2d 1028, 1034 (C.D. Ill. 2010); *Pack v. Damon Corp.*, 320 F. Supp. 2d 545, 557 (E.D. Mich. 2004) ("The arbitration clause is not unenforceable by operation of AAA's Principle 11 Consumer Due Process Protocol."), *rev'd on other grounds*, 434 F.3d 810 (6th Cir. 2006). In any event, "[t]his is a determination that should be left to the arbitrator in the first instance." *Estep*, 735 F. Supp. 2d at 1034.

        c.    <u>Discretion to Modify Arbitration Provision</u>

Plaintiff also argues that the arbitration provision is illusory because the Program Rules provides Defendant with an option to modify the Program Rules. (Opp'n 12.) Under California law, an illusory agreement exists where "a party to a contract retains the unfettered right to terminate or modify the agreement." *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 15-16 (2000). An illusory agreement

does not constitute a valid contract because at least one of the parties is not obligated to perform or refrain from performing a certain act. *Scottsdale Ins. Co. v. Essex Ins. Co.*, 98 Cal. App. 4th 86, 95 (2002). But an agreement is not illusory where a party's power to terminate or modify the contract "is subject to limitations, such as fairness and reasonable notice." *Id.* at 16. Further, "if a contract is capable of two constructions, the court must choose that interpretation which will make the contract legally binding if it can be so construed without violating the intentions of the parties." *Bleecher v. Conte*, 29 Cal. 3d 345, 350 (1981).

Here, Defendant was bound to adhere to the arbitration provision as written in the 2009 Program Rules. Defendant had no discretion as to whether to arbitrate any of its potential claims arising out of, or connected with, MCR. The only way for Defendant to alleviate itself of its duty to arbitrate claims relating to the Program Rules was to modify the Program Rules and remove the arbitration provision. However, that ability to modify the Program Rules was subject to notice. (Merwarth Decl. Ex. 2, at ¶ G.) Thus, because the Court is bound to interpret the Program Rules so that they are legally binding if such a construction is plausible, the Court finds that the arbitration clause was not rendered illusory simply because Defendant could modify the Program Rules subject to notice.

        2.        <u>Unconscionability</u>

Under California law, a contract or clause is rendered unenforceable by the doctrine of unconscionability if the contract or clause is both (1) procedurally unconscionable and (2) substantively unconscionable. *Armendariz v. Found. Health Psychcare Svs., Inc.*, 24 Cal. 4th 83, 114 (2000). Both forms of unconscionability must be present, though not in the same degree. *Id.* Thus, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa." *Id.* "The party resisting arbitration bears the burden of proving unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012).

Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Id.* at 246. Oppression arises where there is a lack of negotiation and meaningful choice. *Id.* at 247. Surprise occurs where the "supposedly agreed-upon terms . . . are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982).

The parties dispute whether the arbitration provision is procedurally unconscionable. Plaintiff argues that the arbitration provision is procedurally unconscionable because Plaintiff had no opportunity to bargain or negotiate the arbitration provision, which was contained in an online, standardized form contract, and was offered strictly on a take-it-or-leave-it basis. (Opp'n 17.) Plaintiff further contends that the arbitration provision was procedurally unconscionable because the provision states that arbitration will be governed by the allegedly non-existent "International

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   CV 12-07472 SJO (Ex)          DATE:   January 2, 2013

Arbitration Rules of the [AAA]" and because Defendant failed to make a copy of said rules available to Plaintiff.  (Opp'n 17-18.)  Defendant argues that the "[Program] Rules are not procedurally unconscionable because they expressly incorporate the AAA Rules."  (Reply 6.)

Plaintiffs' arguments are without merit.  While Plaintiff did not have the opportunity to negotiate the terms of the Program Rules, Plaintiff was by no means forced to participate in MCR in the first instance.  MCR is an optional rewards program, and thus Plaintiff was free not to participate.  *Cf. Armendariz*, 24 Cal. 4th at 117 (requiring a "modicum of bilaterality" in an arbitration agreement between an employee and an employer due to the "basic and substantial nature of the rights at issue").

Further, the Court finds that the surprise factor is not at play here: the Program Rules are only nine pages long, the arbitration provision is printed in legible font, the terms are written in understandable language, and the arbitration provision appears under the conspicuous heading "**Limitation of Liability**."  (Merwarth Decl. Ex. 2, at ¶ I.2.)

Finally, Defendant cites *Hodsdon v. DirecTV, LLC*, No. C 12-02827, 2012 WL 5464615 (N.D. Cal. Nov. 8, 2012) for the proposition that no procedural unconscionability arises so long as an agreement references the rules that will govern future arbitration.  (Reply 6.)  The Court in *Hodsdon* held that "procedural unconscionability can be avoided if the arbitration rules are incorporated into the contract by reference, such incorporation is clear, and the rules are readily available."  *Hodsdon*, 2012 WL 5464615, at *5.  The court further held that the arbitration provision at issue was not procedurally unconscionable because the provision "clearly and explicitly" incorporated the arbitration rules, the provision "state[d] that the applicable rules are those 'in effect at the time the arbitration is initiated," and it was not alleged that the rules were not readily available.  *Id.*

The Court finds the reasoning of *Hodsdon* persuasive.[2]  While the provision refers to the arbitration rules as the "International Arbitration Rules of the [AAA]," when in fact the true name of the arbitration rules is "International Dispute Resolution Procedures," the Court finds that this is a not a material difference.  The reference to the International Arbitration Rules of the AAA provides sufficient notice to consumers such as Plaintiff.

In light of the above, the Court concludes that the arbitration provision is not procedurally unconscionable.  As such, the Court declines to reach the issue of whether the provision is substantively unconscionable

---

[2]  The Court makes no finding as to whether the 2009 Program Rules validly incorporated the International Dispute Resolution Procedures.  The Court's analysis is limited to whether the arbitration provision is procedurally unconscionable.

    D.    <u>Contrary to Public Policy</u>

The Court's analysis does not end there, however, as the arbitration provision appears to violate public policy to the extent that it forces Plaintiff to forego the statutory remedies provided by the TCPA. Both the Supreme Court and the California Supreme Court have found that arbitration provisions are unenforceable to the extent that they force litigants to forgo statutory remedies and prevent them from vindicating their statutory rights. *See Mitsubishi Motors*, 473 U.S. at 628 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000); *Armendariz*, 24 Cal. 4th at 94-95.

Here, language in the second and third clauses of the arbitration provision limits Plaintiff's recoverable damages to "actual out-of-pocket costs incurred." Further, the third clause provides that Plaintiff "waives any and all rights to have damages multiplied or otherwise increased." Plaintiff claims that her out-of-pocket damages are approximately five cents per unsolicited text message. (Opp'n 13.) In contrast, TCPA permits a plaintiff to recover $500 per unsolicited text message and allows a court to award treble damages if the defendant willfully or knowingly violated TCPA. 47 U.S.C § 227(b)(3)(B). In effect, this language relegates Plaintiff to recover a ten-thousandth of what Plaintiff might otherwise recover under the TCPA.

The Court finds that these limitations violate public policy because they force her to waive her remedies provided by TCPA and make arbitration cost-prohibitive. That is, under the arbitration provision as written, Plaintiff would be forced to forgo the statutory remedies available to her such that she would be unable to vindicate her statutory rights under the TCPA, as no rational litigant would pay such high upfront fees for the chance to recover less than a dollar in actual damages.

Thus, the arbitration provision is unenforceable as written.

    D.    <u>Severability</u>

California law gives courts discretion in whether to sever an unconscionable clause from a contract, including contracts that are contrary to public policy. *Armendariz*, 24 Cal. 4th 122. Under California Civil Code section 1670.5, a court "may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a).

Because the Court finds the language limiting Plaintiff to "actual out-of-pocket costs incurred," and forcing Plaintiff to "waive[] any and all rights to have damages multiplied or otherwise increased," violates public policy, the Court severs the third clause in its entirety, as that is the entire function of that clause. Further, the language in the second limiting Plaintiff to "actual out-of-pocket expenses" shall also be severed and unenforceable. However, the language providing that Plaintiff may not recover attorneys' fees is enforceable—the TCPA does not provide for the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 12-07472 SJO (Ex)</u> | **DATE:** <u>January 2, 2013</u> |

recovery of attorneys' fees, and thus this language does not prevent Plaintiff from vindicating her statutory right. Finally, the remaining clause of the arbitration provision is enforceable by Defendant in this case.

III.    RULING

For the foregoing reasons, the Court **GRANTS IN PART** Defendant's Motion.  The Court **ORDERS** the parties to submit this matter to mandatory arbitration in accordance with their agreement as set forth in the Program Rules, except that the third clause is **SEVERED** as void, and the second clause shall function only to prevent Plaintiff from recovering attorney's fees.  Because the Court finds that this dispute is subject to arbitration, the Court **STAYS** this action pending the resolution of the arbitration.  **The Scheduling Conference set for January 28, 2013 is hereby VACATED. The parties shall file a joint status report on April 1, 2012.**

IT IS SO ORDERED.